```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

T.Z., as Guardian of C.G., an Infant
Under the Age of Fourteen (14) Years,

                Plaintiff,              MEMORANDUM OPINION
                                        AND ORDER (CPS)

    -against-                           CV-05-5111

The City of New York, The New York City
Department of Education, Frank DiFranco
and Robert Raskin,

                Defendants.

--------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff C.G., an infant under the age of fourteen years at the time of the events giving rise to this lawsuit, through her guardian T.Z.,[1] commenced this action on November 1, 2005 against defendants City of New York ("City"), the New York City

---

[1] T.Z. and C.G. are proceeding under fictitious names in keeping with Section 50-b(1) of the New York Civil Rights Law because infant plaintiff C.G. is allegedly a victim of sexual abuse. Under that provision,

> The identity of any victim of a sex offense, as defined in article one hundred thirty or section 255.25, 255.26 or 255.27 of the penal law, or of an offense involving the alleged transmission of the human immunodeficiency virus, shall be confidential. No report, paper, picture, photograph, court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any police report, court file, or other document, which tends to identify such a victim except as provided in subdivision two of this section.

McKinney's Civil Rights Law § 50-b(1).
    Infant plaintiff C.G. originally brought this action through her mother and natural guardian, K.G. After K.G.'s death in early 2007, T.Z. became C.G's legal guardian and was substituted as C.G.'s guardian in this action.

Department of Education ("Education Department"), Frank DiFranco ("DiFranco"), and Robert Raskin ("Raskin"), in connection with an alleged sexual assault of C.G. by two fellow students in a classroom while defendant Raskin was present. Plaintiff alleges violations under 42 U.S.C. §§ 1981, 1983, and 1985; 20 U.S.C. § 1681; as well as state law claims of negligence and infliction of emotional distress.[2] Plaintiff seeks compensatory and punitive damages, in addition to attorneys' fees. Now before this Court is plaintiff's appeal of the Magistrate Judge's orders dated February 21, 2007 and March 1, 2007 (1) denying plaintiff's discovery requests concerning an investigation of a sexual assault incident that occurred in June 2000 and (2) denying plaintiff's request to inspect and photograph the classroom in which the assault on plaintiff allegedly occurred. For the reasons set forth below, the Magistrate Judge's order regarding the Special Commissioner's report is affirmed without prejudice and the Magistrate Judge's order with respect to plaintiff's request to photograph the classroom is reversed.

---

[2] Plaintiff states what purports to be a separate claim against all defendants, on the ground that all defendants are liable under New York law because "[t]he acts and/or omissions of defendants, their agents, employees and/or servants resulted in infant plaintiff C.G. losing her passion and love of life, altering her relationship with her immediate family and friends, and impairing her ability to participate in the activities that were formerly central to her life." Complaint ¶¶ 110-11.

## Background

The following facts are taken from plaintiff's Complaint, the record of the proceedings before the Magistrate Judge, and the submissions of the parties in connection with this appeal. Disputes are noted.

*Factual History*

Infant plaintiff C.G. is a minor, born on June 28, 1991. At all times relevant to this action, C.G. was enrolled at Junior High School 278 ("JHS 278") as a special needs student. JHS 278 is located in Kings County, New York.

Defendant City of New York is a municipal corporation existing under the laws of the State of New York. Defendant New York City Department of Education is an agency of defendant City, with control over the City's public schools. Defendant Education Department receives federal financial assistance. Defendant Raskin is a teacher employed at JHS 278 and is an employee of the City and the Education Department.

Plaintiff alleges that on November 9, 2004, two students enrolled at JHS 278 assaulted a female student identified as "Shanique" in Room 204 of JHS 278 during a computer class conducted by Defendant Raskin. Plaintiff states that after assaulting "Shanique," the two students sexually assaulted C.G. while defendant Raskin was present. A fellow student stopped the

assault, at which point C.G. fell to her knees crying. Plaintiff alleges that defendant Raskin walked over to C.G. and stated that "she should get off her knees because she wasn't in church." Complaint ¶ 56.

On December 13, 2004, plaintiff alleges that C.G. was touched by a different student than the one involved in the earlier incident at JHS 278. Plaintiff states that C.G. became afraid and told the student not to touch her. Later that afternoon, the student who had touched C.G. earlier in the day approached her and "put his hands in her face." Complaint ¶ 59. C.G. struck the student, and the student then struck C.G. On December 14, 2004, C.G. was required to attend a meeting in the office of defendant DiFranco, vice principal of JHS 278. DiFranco allegedly referred to C.G. as "not a victim but a thug," Complaint ¶ 65, and suspended C.G. from school for five days. Plaintiff alleges that the other student involved in the December 13, 2004 altercation was not punished.

*Procedural History*

Special Commissioner for Investigation's Report

After plaintiff commenced this action, during the course of discovery, plaintiff obtained a report issued by the Special Commissioner for Investigation of the New York City School District. The report concerned a sexual assault incident

involving six girls at JHS 278 on June 9, 2000, four years prior to the incident involving plaintiff C.G. According to the report, on June 9, 2000, around 35 teachers took the afternoon off, and the principal, with limited staff, declared an "extended recess." Plaintiff Exh. A, Special Commission Report ("Report"), p. 1. During the recess, "hundreds of students . . . crowded the schoolyard, with little supervision." *Id.* "[I]n the sprinkler area" of the schoolyard, several sixth and seventh grade girls were sexually assaulted by eighth grade boys. *Id.* The dean of the school witnessed at least one of these incidents. *See id.* p. 3. The dean instructed the victims of the incident to write a statement describing the event in the auditorium and they were then sent back into the schoolyard. *Id.* One of the report's findings was that the school officials, including defendant Frank DiFranco, who was a teacher at the time,

> failed to call the police immediately upon learning of the attack and, instead conducted their own investigation. They compounded that failure with their insensitive treatment of the parents of the victims, including their repeated avoidance of police involvement and their refusal to allow school phones to be used to alert law enforcement.

Report, p. 8. The Special Commissioner for Investigation recommended that disciplinary action be taken against the school officials, including DiFranco. *Id.*

On April 21, 2006, plaintiff served defendants with a written demand for disclosure, calling for production of the investigative file compiled in connection with the Special

Commissioner for Investigation's Report. Defendants objected to the demand, and on February 21, 2007, the issue was raised at a discovery conference before Magistrate Judge Azrack. Plaintiff states that at this conference, "plaintiff urged [Magistrate Judge] Azrack to preclude defendants from challenging the report's factual accuracy or, in the alternative, compel defendants to comply with plaintiff's demand for all documents pertaining to the investigation." Madeline Lee Bryer Affirmation in Support of Plaintiff's Objections to Orders of Magistrate Judge ("Bryer Affirmation") ¶ 6. Later that day, Magistrate Judge Azrack issued a written order, ruling that "plaintiff's application for additional documentation relating to [June 9, 2000] schoolyard incident denied as it has report already." Magistrate Judge Order dated Feb. 21, 2007. By letter dated February 23, 2001, plaintiff requested that the order specify that "[f]or purposes of this litigation the City shall not challenge the factual accuracy of the June 9, 2000 Special Commissioner for Investigation's report." Letter from Plaintiff to Magistrate Judge Azrack ¶ 3, dated Feb. 23, 2007.

On March 1, 2007, the parties and the Magistrate Judge participated in a conference call. Plaintiff states that during this call, "[Magistrate Judge] Azrack denied plaintiff's request that the defendants be precluded from contesting the factual accuracy of the report, thus leaving open the possibility that

defendants could challenge its accuracy through testimony." Bryer Affirmation ¶ 9. Magistrate Judge Azrack issued another order that day stating that "[p]laintiff's submission re: discovery rulings correct except for [paragraph 3, comprising plaintiff's request that the City not challenge the factual accuracy of the report]." Magistrate Judge Order dated Mar. 1, 2007.

Inspection of Classroom

Plaintiff states that earlier in discovery, counsel for defendant Raskin represented that he intended to urge as a defense that defendant Raskin was unable to see the assault alleged in this case because of the physical layout of the classroom. Bryer Affirmation ¶ 10. On March 28, 2006, "plaintiff served a Request for Entry on Land demanding that she be permitted to enter, inspect and photograph the classroom." *Id.* The City responded that the physical layout of the classroom had changed since the alleged incident.

At the February 21, 2007 conference before Magistrate Judge Azrack, the parties discussed whether plaintiff could inspect the classroom. The City's counsel stated that "certain tall computer towers located on the students' desks had been removed," *id.* ¶ 10, and that plaintiff should not be permitted to photograph the classroom because it was not in the same condition as the date of

the alleged incident. *Id.* ¶ 12. Plaintiff responded that "deposition witnesses could easily testify about what had changed, and that, in view of [defendant] Raskin's intended defense, the jury should have access to a picture of the classroom rather than a confusing verbal description." *Id.* Plaintiff states that Magistrate Judge Azrack denied plaintiff's request at the conference, stating that plaintiff's counsel should "have a witness draw the classroom." *Id.* In her February 21, 2007 order, Judge Azrack wrote that "Application for schematic of classroom denied." Magistrate Judge Order dated Feb. 21, 2007. Plaintiff now appeals the Magistrate Judge's orders denying plaintiff's request that defendant be precluded from contesting the factual accuracy of the report and denying plaintiff's request to inspect and photograph the classroom.

## Discussion

*Standard of Review*

Non-dispositive motions decided by a magistrate judge are to be modified or set aside by the district judge assigned to the case only where "the magistrate judge's order [is] found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

"Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990); *see also Federal*

*Ins. Co. v. Kingsbury Properties, Ltd.,* 1992 WL 380980, at *2 (S.D.N.Y. 1992) ("Pretrial matters involving discovery are generally considered nondispositive since they do not resolve the substantive claims for relief alleged in the pleadings.").

Under Rule 72(a), "[a] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for South. Cal.*, 508 U.S. 602, 622 (1993) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R .J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000) (citation and internal quotations omitted).

> Under Federal Rule of Civil Procedure 26,
>
> parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. Proc. 26(b). The scope of discovery is subject to limitations, such as whether the burden or expense of a discovery request "outweighs its likely benefit" or if the request is unreasonably cumulative or duplicative. *See* Fed. R. Civ. Proc.

26(b)(2)(C).[3]


*Application*

Denial Regarding the Report

Plaintiff contends that "the City should be precluded from challenging the factual accuracy of the [Special Commissioner for Investigation's] report in order to prevent a mini-trial on the June 9, 2000 incident."  Bryer Affirmation ¶ 19.  Alternatively, "in the event that the City is permitted to contest the conclusions of the report, [] plaintiff should not be put in a position where the City and DiFranco will be able to challenge the Commissioner's findings through the [] testimony of their witnesses while withholding the documents through which plaintiff could rebut such testimony."  *Id.*

Defendants argue that plaintiff should be denied access to documents relating to the report "because the facts surrounding

---

[3] Federal Rule of Civil Procedure 26(b)(2)(C) specifically provides that

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. Proc. 26(b)(2)(C).

the Report are at issue – not the underlying facts of the incident." Letter from John Graziadei to Judge Sifton ("Graziadei Letter"), dated June 8, 2007, p. 2. Defendants state that they

> acknowledge the existence of the Report and its conclusions, including the recommendations of discipline, but maintain that defendants should be permitted to fully and accurately testify as to their recollection of the Report and its aftermath to the extent such testimony is relevant to the defense against plaintiff's negligent hiring and retention claims.

*Id.*

At this stage, plaintiff has not shown that the documents compiled in connection with the report are reasonably calculated to lead to admissible evidence. With respect to plaintiff's negligent hiring, retention, and supervision claims, the Special Commissioner's findings in the report establish that the Department of Education had notice of certain defendants' conduct and the Special Commissioner's recommendations in connection with the June 2000 incident. Plaintiff has not demonstrated how defendants' testimony relating to the report, the content of which is not known at this stage, would require discovery beyond the findings of the Special Commissioner's report. Accordingly, the Magistrate Judge's order with respect to the Special Commissioner's report is affirmed, without prejudice to plaintiff's renewing her application for access to the documents at issue in the event there are inconsistencies between defense

witnesses' testimony and the factual findings of the report.[4]

Denial of Site Inspection

Defendants state that Magistrate Judge Azrack denied plaintiff's request to inspect, measure, and photograph the classroom where the alleged assault occurred because the inspection would be "overly burdensome" and because "significant alterations made to the classroom since the incident rendered the discovery not relevant or reasonably calculated to lead to the discovery of admissible evidence," Graziadei Letter, p. 3, in particular "significant changes have been made to the classroom structure, the placement of furniture inside of the classroom, the installation of fixtures, and the arrangement of computer laboratory equipment." *Id*. Magistrate Judge Azrack determined that "plaintiff would have sufficient opportunity to question defendants at their depositions as to the layout of the classroom as it existed on November 9, 2004, the day of the alleged

---

[4] Defendants also argue that Magistrate Judge Azrack's order dated April 9, 2007, after plaintiff's appeal, precludes discovery of the incidents underlying the June 9, 2000 investigation report, "insofar as it may be evidence of student on student violence." Graziadei Letter, p. 3. In the April 9 order, Magistrate Judge Azrack directed defendants "to disclose any incidents of student on student violence *in classrooms* at JHS 278 for a five-year period prior to Nov[ember] 9, 2004." Magistrate Judge Azrack Order dated April 9, 2007 (emphasis in original). Clearly, the Magistrate Judge's order should not be construed to exclude evidence of incidents of student assaults occurring on defendants' watch. Moreover, since a decision on the documents compiled in connection with the investigation report was pending appeal at the time of the April 9 order, those documents were not at issue with respect to the April 9 order.

incident." *Id.* In addition, the Magistrate Judge noted that plaintiff could have a witness draw a schematic of the classroom. Bryer Affirmation ¶ 12.

The burden imposed by such an inspection is not as severe as the burdens recognized in case law,[5] *see e.g., Dusa Pharmaceuticals, Inc. v. New England Compounding Pharmacy, Inc.*, 232 F.R.D. 153 (D.Mass. 2005) (denying request to inspect potentially dangerous areas in industrial plants); *Long v. United States Brass Corp.*, 2004 WL 1725766, at *4 (S.D.N.Y. 2004)(same). Plaintiff states that "[t]his case requires witnesses to testify where in the room they were at different points in time, and a photograph of the room would enable a jury to see where they were as the events progressed." Bryer Letter, p. 4. Questioning witnesses about the classroom's layout at depositions and asking a witness to draw a diagram of the room, as Magistrate Judge Azrack permitted, would accomplish similar objectives. The Magistrate Judge was correct in noting that plaintiff has not shown that photographs taken now will constitute admissible evidence either because of apparently undisputed changes in the sight lines in the classroom or because the photographs may be cumulative. Nevertheless, the inspection and photographs are

---

[5] Plaintiff states that the inspection would not be burdensome because it "would be conducted by plaintiff's counsel and a single photographer, would involve no more than a few minutes of photography and measurement, and could easily be conducted after school hours when the room is not being used." Bryer Letter, p. 4.

clearly reasonably calculated to lead to the discovery of admissible evidence such as a schematic accurately reconstructing the classroom sight lines as they existed at the time of the incident. Accordingly, I find that Magistrate Judge Azrack erred in this determination.

## Conclusion

For the reasons set forth above, the Magistrate Judge's order regarding the Special Commissioner's report is affirmed without prejudice and the Magistrate Judge's order with respect to plaintiff's request to photograph the classroom is reversed. The Clerk is directed to transmit a filed copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated : Brooklyn, New York
        July 17, 2007

                            By: <u>Charles P. Sifton (electronically signed)</u>
                                United States District Judge