UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

T.Z., as guardian of C.G., an Infant,

                          Plaintiff,        05-CV-5111(CPS)(JMA)

       -against-                            MEMORANDUM
                                            OPINION
The City of New York, the New York          AND ORDER
City Department of Education, Frank
DiFranco, and Robert Raskin,

                          Defendants.

-------------------------------------X
SIFTON, Senior Judge.


       Plaintiff T.Z.,[1] on behalf of C.G., an infant under the age

of fourteen years at the time of the events giving rise to this

lawsuit, commenced this action on November 1, 2005 against

defendants City of New York ("City"), the New York City

Department of Education, Frank DiFranco ("DiFranco"),[2] and Robert

Raskin ("Raskin"), in connection with an alleged sexual assault

of C.G. by two fellow students in a classroom while defendant

Raskin was present. Plaintiff alleged violations under 42 U.S.C.

§§ 1981, 1983, and 1985; Title IX of the Educational Amendments

of 1972, 20 U.S.C. § 1681; as well as state law claims of

_____

       [1]This action was originally brought by C.G.'s mother and natural
guardian, K.G. After K.G.'s death in early 2007, T.Z. became C.G's legal
guardian and was substituted as C.G.'s guardian in this action.

       [2]At times, I will refer to defendants City of New York, New York City
Department of Education and Frank DiFranco collectively as the "City
Defendants."

negligence and infliction of emotional distress.[3] Plaintiff seeks compensatory and punitive damages, in addition to attorneys' fees. On May 22, 2009, I granted in part and denied in part a motion for summary judgment by the City defendants, granted in part and denied in part a motion for summary judgment by Raskin, and denied a motion for summary judgment by plaintiff. Now before the court is a motion for reconsideration by plaintiff with regards to her Title IX claim against the City. For the reasons stated below, the motion is granted, and the City's motion for summary judgment on the Title IX discrimination claim is denied.

## BACKGROUND

Familiarity with the parties and factual allegations of this case is assumed.[4] A brief recitation of facts relevant to this motion follows.

At all times relevant to this action, C.G. was enrolled at Junior High School 278 ("JHS 278") as a special needs student. Defendant Raskin is a teacher employed at JHS 278 and is an employee of the City and the Education Department. During the

---

[3]Plaintiff additionally stated what purported to be a separate claim against all defendants, on the ground that all defendants are liable under New York law because "[t]he acts and/or omissions of defendants, their agents, employees and/or servants resulted in infant plaintiff C.G. losing her passion and love of life, altering her relationship with her immediate family and friends, and impairing her ability to participate in the activities that were formerly central to her life ." Complaint ¶¶ 110-11.

[4]*See T.Z. v. City of New York*, 2009 U.S. Dist. LEXIS 43600 (E.D.N.Y. May 22, 2009) (summary judgment opinion).

times relevant to this lawsuit, Raskin taught computer class at
JHS 278.

On November 9, 2004, at some time during Raskin's third
period computer class, C.G. left class to speak to her guidance
counselor. When C.G. returned, a number of students were standing
up and talking loudly, while Raskin was working on his computer
at his desk. With Raskin's permission, C.G. sat down in the back
corner of the room to talk to two friends. A few minutes later,
fellow classmate Tamaine began chasing her around the room. C.G.
told Raskin to make Tamaine leave her alone but Raskin instead
told her to sit down, which she did, at the back of the room. A
male student named Laurie approached C.G. and asked her for a
hug; C.G. refused. Laurie hugged C.G. from behind and began
touching her breasts while she tried to fight him off by kicking
and biting. Next, Tamaine walked up to plaintiff and told Laurie
to hold down plaintiff's legs as he began touching her breasts.
Tamaine then touched C.G. on her vagina and buttocks outside of
her clothing, after which he pulled her pants down and caressed
her buttocks. By this time there was a crowd of students around
plaintiff, who was slouched down in her chair. C.G. was yelling
loudly for help, but did not call out to Raskin in particular.
The incident ended when C.G.'s friend Natalia pushed everyone out
of the way and pulled Tamaine away from her. It is not clear how

long the incident lasted.[5] Afterwards, plaintiff was crying in
Natalia's lap, at which point Raskin approached and told her to
get up and go to her seat. C.G. did not tell Raskin what happened
to her. After the incident, C.G. went to her homeroom class, but
did not tell either of her teachers what had happened. C.G.'s
friend told a teacher about the incident; the teacher approached
C.G. and asked that she write a statement. C.G. then met with the
assistant principal, statements were taken from student
witnesses, and the police and C.G.'s family were called.

After the incident, Laurie and Tamaine were taken out of
C.G.'s class and were never in the same class as C.G. again. C.G.
testified at suspension hearings for Laurie and Tamaine, who were
as a result suspended for 87 days. After serving their
suspension, Laurie and Tamaine returned to JHS 278 in April,
2005, and were transferred out of the school in October, 2005.
After his return to school, Laurie would stare at C.G. when he
saw her. During eighth grade, after the boys were transferred out
of the school, plaintiff saw Tamaine by the front desk and had a
panic attack.

Following the incident, C.G.'s grades in seventh grade

---

[5]Plaintiff estimated during her deposition in 2007 that the incident
lasted five, six, or seven minutes. C.G. Dep. at 88. In 2005, when plaintiff
was examined pursuant to the initial investigation of the incident, she stated
that she could not remember how long the incident took, but that it "seemed
like forever" to her. Examination of C.G. on June 28, 2005, at 58, attached as
Exhibit I to Declaration of Meghan Cavalieri in Further Support of Summary
Judgment Motion.

dropped from an average of 72 to an average of 64. However, her grades improved again in eighth grade. C.G. had 29 absences from school in the spring term after the assault, compared to 28 for the entire previous year. C.G. entered psychotherapy as a result of the assault and was diagnosed with post-traumatic stress disorder. C.G. suffered self-cutting, nightmares, difficulty sleeping, flashbacks, panic attacks, uncontrollable crying, loss of concentration, loss of energy, impulsive aggression against boys, and difficulty sleeping. She was deemed to be a high risk of suicide by her therapist and complained of being depressed and anxious. Her therapist indicated that these symptoms came into existence following C.G.'s assault.[6]

In my opinion of May 22, 2009, I granted summary judgment to the City defendants on the Title IX discrimination claim, the Title IX retaliation claim, the § 1983 claim, and the negligent retention and promotion claims. I granted summary judgment to defendant DiFranco on the Title IX and § 1983 claims, resulting in his dismissal from the lawsuit. I granted summary judgment to defendant Raskin on the Title IX claim only. In her present motion, plaintiff seeks reconsideration of my grant of summary judgment to the City defendants on the Title IX discrimination claim.

---

[6]These last two facts were not discussed in my previous opinion. They are drawn from the Affidavit of Madeline Bryer, Ex. J., at 8, 19.

**DISCUSSION**

## I. Standard for Motion for Reconsideration

The standard for success on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995);[7] *Pereira v. Aetna Cas. and Sur. Co. (In re Payroll Express Corp.)*, 921 F.Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). It is within the district court's discretion to treat case law and legislative history as "data that the court has not previously considered." *Shrader*, 70 F.3d at 257.

Local Rule 6.3 "is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have

---

[7] Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule. Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

been considered fully by the court." *Ades v. Deloitte & Touche*, 843 F. Supp. 888, 890 (S.D.N.Y. 1994). A Local Rule 6.3 motion is not to be used as a substitute for appeal. *See Morser v. A.T. & T. Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). In its motion for reconsideration, a party may not "advance new facts, issues, or arguments not previously presented to the Court." *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quotation omitted). The decision to grant or deny a motion for reargument is within the sound discretion of the Court. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 132 (2d Cir. 1999).

Reconsideration is appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *See Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983). Additionally, reconsideration is appropriate where a court misinterprets or misapplies relevant case law in its original decision. *See O'Brien v. Bd. of Educ. of Deer Park Union Free School Dist.*, 127 F. Supp. 2d 342, 346 (E.D.N.Y. 2001).

## II. Title IX

A brief statement of the law governing Title IX peer-on-peer

sexual harassment suits is warranted.

Title IX of the Education Amendments of 1972 ("Title IX"), provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The Supreme Court has long "recognized an implied private right of action under Title IX... [for] money damages." *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 639; 19 S. Ct. 1661; 143 L. Ed. 2d 839 (1999).

A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove that the alleged harassment took place in a location within the control of a recipient of federal funds. *Davis*, 526 U.S. at 645. Furthermore, a plaintiff must prove the following elements. First, an appropriate person[8] must have "actual knowledge" of the alleged discrimination or harassment, *Id.* at 650. Second, a funding recipient is liable for peer-on-peer harassment only if "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities," and the deliberate indifference "subjected" the plaintiff to discrimination. *Davis*, 526 U.S. at 633, 640-41. Third, the

---

[8]"[A]n 'appropriate person'... is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290; 118 S. Ct. 1989; 141 L. Ed. 2d 277 (1998).

discrimination must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id*. at 633.

### III. Plaintiff's Claims of Error

In my summary judgment opinion, I found that plaintiff had demonstrated a triable issue of fact as to whether Raskin, a school official with the authority to intervene, had actual knowledge of the assault on plaintiff as it was taking place. I further found that, if Raskin did know of the incident was taking place, then his failure to stop it could constitute deliberate indifference. However, plaintiff's Title IX claim faltered on the third element. I determined that, although the harassment was severe and objectively offensive, it was not "pervasive," because it was a one-time incident. In addition, I found that plaintiff had not demonstrated a material issue of fact as to whether she had been denied access to an educational activity or benefit. Plaintiff urges reconsideration of both these determinations. According to plaintiff, a sufficiently serious one-time assault can rise to the level of 'pervasiveness' as that term is used by the *Davis* Court. Second, given that the assault on C.G. was severe, pervasive, and objectively offensive, there is a material issue of fact as to whether the negative effects suffered by C.G. following the assault effectively barred her access to

educational opportunities or benefits.

The City defendants counter that plaintiff has not met the procedural requirements of a motion to reconsider, because plaintiff has not raised any matter or controlling decision that the Court had overlooked and which, had it been considered originally, may have materially influenced its earlier decision. Defendants argue that plaintiff has improperly relied on new cases not cited in her previous submissions on the summary judgment motion. Defendants additionally oppose the motion on the merits, arguing that a single instance of assault cannot be considered 'pervasive.'[9]

## A. Plaintiff's Motion for Reconsideration of My Pervasiveness Finding

### 1. Reconsideration is Granted

In my summary judgment opinion, I stated that plaintiff had not presented any case holding that a one-time assault satisfies the 'pervasiveness' standard for Title IX claims. In her motion for reconsideration, plaintiff refers to her reply papers on the summary judgment motion, in which she cited two cases stating that a single assault could be sufficiently serious to qualify as

---

[9]Defendants offer no argument as to why plaintiff's claim that she was denied equal access to educational benefits lacks merit.

'pervasive' within the meaning of the *Davis* structure.[10]

Plaintiff additionally cites a document from the United Stated

Department of Education supporting her contention that a single

assault may satisfy the standard. Because I overlooked the fact

that plaintiff had indeed cited cases in support of her position

and the fact that the Department of Education had published a

relevant report on the subject, and because consideration of

these materials would reasonably be expected to alter the

conclusion reached in that decision, plaintiff's motion for

reconsideration is procedurally sound and is granted.


## 2. A One-Time Assault May Be 'Pervasive'

The *Davis* Court did not define the meaning of the term

'pervasive.' However, it did indicate that the analysis was a

complex, contextual one. "Whether gender-oriented conduct rises

to the level of actionable harassment... depends on a

constellation of surrounding circumstances, expectations and

relationships, including... the age of the... victim and the

number of individuals involved." *Davis*, 526 U.S. at 651.

"[P]hysically threatening or humiliating" conduct is more likely

than offensive utterances to rise to the level of discrimination.

*Hayut v. State Univ. of New York*, 352 F.3d 733, 745-46 (2d Cir.

---

[10]The cases are *Doe v. Dallas Independent Sch. Dist.*, 2002 U.S. Dist.
LEXIS 13014 (N.D. Tex. July 16, 2002) and *Elgamil v. Syracuse Univ.*, 2000 U.S.
Dist. LEXIS 12598 (N.D.N.Y. 2000).

2003). Actionable claims are limited to those that have a "systemic effect" on a plaintiff's access to educational programs. 526 U.S. at 652. "Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id*. at 653.

In *Doe v. Dallas Independent Sch. Dist.*, 2002 U.S. Dist. LEXIS 13014 (N.D. Tex. July 16, 2002),[11] the court held that a single instance of an assault in which a student inserted his hand into plaintiff's vagina, causing damage, was sufficient to state a Title IX claim. The court noted that the term selected by the *Davis* court was "pervasive," defined as "that becomes or tends to become diffused throughout every part of," contrasting the term with the word "persistent." *Id*. at *16 (citing Merriam Webster's Collegiate Dictionary 867, 868 (10th ed. 1994)). The court reasoned that a serious sexual assault could affect a student deeply enough to bar her access to educational resources in a way that a simple offensive touching would not. *Id*. at *17-

---

[11]This case was cited by plaintiff but not referenced in my prior opinion.

18. The same conclusion was reached by the court in *Elgamil v. Syracuse Univ*., 2000 U.S. Dist. LEXIS 12598 (N.D.N.Y. 2000),[12] which stated that a single event could meet the standard of pervasiveness if it were "sufficiently threatening or repulsive, such as a sexual assault." *Id*. at *19. Supporting this position, the United States Department of Education's guidance on harassment of students under Title IX states that "a single or isolated incident of sexual harassment may, if sufficiently severe, create a hostile environment." U.S. Dept. of Education, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students or Third Parties*, 66 F.R. 5512, at 6, n.45 (January 19, 2001).[13] In addition to these cases

---

[12]This case was cited by plaintiff but not referenced in my prior opinion. Defendant argues that this case is inapplicable as it applies Title VII cases to its Title IX analysis, whereas in my prior opinion, I wrote that, contrary to plaintiff's arguments, the standard for evaluating sexual harassment under Title VII is not 'identical' to the Title IX framework for peer-on-peer sexual assault. However, a recognition that the Title IX threshold for finding harassment is higher than that for Title VII does not bar consideration of Title VII caselaw for guidance on the interpretation of the Supreme Court's meaning when it included the word 'pervasive' in the *Davis* test. While "the standards for establishing liability under Title IX and Section 1983 may not be wholly congruent," both statutes require proof that the conduct at issue is severe and pervasive; cases like *Hayut v. State Univ. of New York*, 352 F.3d 733 (2d Cir. 2003) (applying both the Title IX and Title VII frameworks pertaining to sexual harassment) are of use in determining whether a student plaintiff has met the Title IX threshold. *See Sauerhaft v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist*., 2009 U.S. Dist. LEXIS 46196, *25 n.11 (S.D.N.Y. June 2, 2009).

The *Elgamil* court quoted Title VII language stating that "extreme single incidents 'may alter the plaintiff's conditions of employment without repetition.'" 2000 U.S. Dist. LEXIS 12598, *19-20 (quoting *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 797 (2d Cir. 1998)). In the Title IX context, an extreme single incident may bar the victim's access to an educational opportunity or benefit.

[13]This document was cited by plaintiff in her summary judgment papers but not discussed in my prior opinion.

previously cited, plaintiff refers to two decisions supporting
her argument that a single assault may rise to the level of
seriousness required for Title IX liability.[14] In *Sauerhaft v.
Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 2009
U.S. Dist. LEXIS 46196, *25 n.11 (S.D.N.Y. June 2, 2009), the
court stated in dicta that the Title IX standard is not met by a
single instance of one-on-one harassment "unless the instance is
serious enough to have the systemic effect of denying the victim
equal access to an educational program or activity." In *M. v.
Stamford Bd. of Educ*, 2008 U.S. Dist. LEXIS 51933 (D. Conn.
2008), the court found that a single instance of rape that took
place in the school's basement was "precisely the type of action
covered by Title IX." *Id*. at *24.

Persuaded by the reasoning of *Doe*, *Elgamil*, *Sauerhaft* and
*M.*, noting the position of the Department of Education, and
mindful of the statement of the *Davis* Court that a single
instance of harassment *could* have the effect of denying a student
access to educational benefits and opportunities (although it
would be unlikely), I find that a sufficiently serious one-time
sexual assault may satisfy the 'pervasiveness' requirement of the

---

[14]Once a plaintiff has shown that a court has overlooked factual issues,
including caselaw, presented in the underlying motion, it is within the
district court's discretion to consider "additional relevant case law"
presented in the reconsideration papers. *Shrader*, 70 F.3d at 257. Such case
law may be considered even if it is not controlling precedent. *See id*. (citing
cases from several other circuits that had been presented by the party seeking
reconsideration).

*Davis* standard.

In this case, taking the facts in the light most favorable to plaintiff, C.G. suffered a serious sexual assault that qualifies as a class D felony under New York law.[15] She was groped by one boy, who then held her down while another boy removed her clothing and touched her buttocks, while several other students watched. This incident was far removed from cases of simple inappropriate touching which, if made subject to Title IX liability, would result in a flood of litigation. Given that a single instance of sexual assault may rise to the level of 'pervasiveness' as a matter of law, I find that there is a material issue of fact regarding whether the assault on plaintiff was sufficiently serious to trigger Title IX liability.

This result is not in conflict with the *Davis* Court's intent to prevent the limitless liability that could arise from "the inevitability of student misconduct" if single-instance assaults were recognized as giving rise to Title IX liability. *See* 526 U.S. at 652-53. While it may be "inevitable" that students will "tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend," *Davis*, 526 U.S. at

---

[15]*See* N.Y. Penal Law § 130.65 (sexual abuse in the first degree where a person subjects another to sexual conduct by forcible compulsion); *People v. Del Campo*, 281 A.D.2d 279 (1st Dept. 2001) (offense committed when defendant grabbed victim, limiting her freedom of movement, and rubbed her breasts and buttocks); *In re Michael DD*, 33 A.D.3d 1185 (3d Dept. 2006) (offense made out when defendant broke belt while attempting to remove the victim's pants and made contact with victim's breasts when attempting to lift her shirt).

673 (Kennedy, J., dissenting), it is not inevitable that groups of teenage students will commit sexual assaults on school property that rise the level of felonies. The question of whether the assault on plaintiff was "inevitable" boy-girl horseplay that the *Davis* court stated would not rise to the level of Title IX harassment or whether it was serious enough to have a systemic effect on plaintiff's educational opportunities is one for the jury.

## B. Plaintiff's Motion for Reconsideration of My Denial of Access to Educational Benefits Finding

### 1. Reconsideration is Granted

In my summary judgment opinion, I stated that the allegations that C.G. suffered numerous ill effects following her assault did not contravene the conclusion that the assault had not been pervasive enough to qualify as denying plaintiff access to educational benefits. I further noted that C.G. suffered no harassment following the incident, and that there was no indication that C.G. had difficulties attending classes or was otherwise denied access to the school's resources and benefits. In arguing for reconsideration, plaintiff refers to two controlling decisions, *Davis* and *Doe v. East Haven Bd. of Educ*, 200 Fed. Appx. 46 (2d Cir. 2006), which were previously cited in her summary judgment papers, in which courts found that effects

suffered by students comparable to plaintiff's ill effects rose
to the level of denying access to educational benefits. Plaintiff
additionally argues that I misapplied the holding of the only
case I relied upon in my prior decision on the denial of access
to education issue, *Soriano v. Bd. of Educ.*, 2004 U.S. Dist.
LEXIS 21529, at * 21 (E.D.N.Y. October 27, 2004), having
misunderstood the seriousness of the assault that was at issue in
that case.

Because plaintiff's motion points to controlling decisions
that I overlooked in my prior opinion, and because the Court's
misapplication or misinterpretation of a case upon which it
relied significantly in rendering its previous decision, if true,
is a matter that might reasonably be expected to alter the
conclusion reached in that decision, plaintiff's motion for
reconsideration is procedurally sound and is granted.


**2. A Material Issue of Fact Exists As to Whether Plaintiff
Was Denied Access to Educational Benefits**

In *Davis*, the Court stated that a plaintiff must show that
the results of the harassment "so undermine[d] and detract[ed]
from [her] educational expeirence that [she was] effectively
denied equal access to an institution's resources and
opportunities." 526 U.S. at 650. The plaintiff in *Davis* did not
withdraw from school following her harassment. Instead, her

grades decreased, she experienced difficulty concentrating in class, and she wrote a suicide note. *Id*. at 634. These injuries were sufficient to state a cause of action, as they had a "concrete, negative effect on [the plaintiff's] ability to receive an education." *Id*. at 653-54. In *Doe v. East Haven*, the Second Circuit upheld a Title IX jury verdict in favor of a plaintiff who was verbally harassed by fellow students for five weeks following her rape outside of school by two fellow students. The court held that the fact that a student "would be crying and upset" almost every day as a result of the harassment, in conjunction with repeated absences from class, was sufficient to establish the element of severe and pervasive harassment that systematically denied her access to educational benefits. 200 Fed. Appx. at 48-49. The Court cautioned that "even where a Title IX plaintiff's academic performance [does not suffer] but the harassment simply creates a disparately hostile educational environment relative to her peers, the issue of whether the harassment deprived the plaintiff of educational opportunities and benefits is one for the trier of fact." *Id*. at 48.

In light of these opinions holding that relatively moderate ill effects following sexual harassment events were sufficient to establish an issue of fact as to whether plaintiff could recover under Title IX, I find that plaintiff's allegations, supported by documentary evidence, that C.G. had nightmares, was cutting

herself, could not sleep, cried uncontrollably, had flashbacks, was deemed by her therapist to be at risk of suicide, experienced declining grades, had difficulty concentrating, was frequently absent from school, suffered post-traumatic stress disorder, and had become more aggressive with her peers as a result of the incident are sufficient to raise a material issue of fact as to whether the negative effects of her assault effectively barred her access to educational opportunities at school. Plaintiff further notes that C.G.'s five-day suspension for hitting another student, discussed in the motion for summary judgment, could plausibly be said to have resulted from C.G.'s increased aggression towards peers as a result of her assault.

In my prior opinion, I referred to *Soriano v. Board of Education*, in which the court held that a fourth-grader who was subject to two incidents of sexual touching on the outside of her clothing had not demonstrated that she suffered pervasive harassment. The court determined that evidence introduced by plaintiff that she was afraid to go out and play, had nightmares and declining grades, and had to see a therapist was insufficient to overcome the result that the harassment was not serious enough to qualify as a Title IX violation. Having found that the harassment suffered by C.G. was not 'pervasive,' I referred to *Soriano* for the proposition that relatively severe after effects of harassment do not require a finding of liability, where the

underlying harassment is not severe and pervasive. Because I now find that C.G. has alleged facts that could lead a fact finder to determine that the harassment she suffered was pervasive, the *Soriano* decision is no longer applicable to the analysis. In addition, my prior opinion incorrectly referred to the incidents in *Soriano* as "two sexual assaults," when in fact the *Soriano* court described them as incidents of harassment. 2004 U.S. Dist. LEXIS 21529 at *20. The different in degree of severity is significant when considering the application of *Soriano* to this case.

Having determined that plaintiff is entitled to reconsideration of my previous ruling, and having found that there are material issues of material fact as to the pervasiveness of the harassment against C.G. and whether the negative effects of the assault resulted in a deprivation of access to educational opportunities and resources, I now hold that the City defendants are not entitled to summary judgment on the Title IX harassment claim.

## CONCLUSION

For the reasons stated herein, the motion for reconsideration is granted, and the motion for summary judgment on the Title IX harassment claim by defendants City of New York and New York City Department of Education is denied. The Clerk is

directed to transmit a copy of the within to all parties and the

assigned Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, New York
          June 23, 2009


                    By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                              United States District Judge